(No. 4231

RUFUS H. BROWN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.
*Opinion filed April 18, 1950.*

*Petition of Claimant for Rehearing denied May 9, 1950.*

W. T. DENNIS, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

Claimant, Rufus H. Brown, was employed in the Division of Highways of the State of Illinois as a highway section man's helper.

No jurisdictional questions are raised. Claimant's earnings for the year preceding his claim were $2,158.06. He is married, but has no children under 16 years of age dependent upon him for support.

On October 27, 1948, Mr. Brown was one of a group of men assigned to remove broken concrete and other debris from the shoulders of SBI 1, about 3½ miles north of Norris City. At approximately 10:00 A.M., Mr. Brown started to pick up a piece of concrete. As he lifted, he felt a sharp pain in his right hip region. Although the pain persisted, Mr. Brown continued working. He consulted his family physician, Dr. J. Bryant, who on November 4, 1948, recommended an examination by a specialist in back injuries.

The Division of Highways completed arrangements for an examination of Mr. Brown on November 8, 1948 at the office of Dr. J. Albert Key, professor of clinical orthopedic surgery, Washington University, School of Medicine, St. Louis, Missouri. Dr. Key has as associates, Dr. Fred Reynolds, instructor of clinical orthopedic surgery, Washington University, School of Medicine, and Dr. Lee T. Ford, a specialist in orthopedics.

Doctors Reynolds and Ford submitted medical reports, which showed that claimant was operated on on December 7, 1948; that an old rupture of the lumbo sacral disc on the right was found and removed, and at the space between the fourth and fifth lumbar vertebrae on the right a completely ruptured disc was present, which was removed.

The last medical report showed the following:

"Mr. Rufus Brown, who was operated upon on December 7, 1948 at Barnes Hospital, was seen on June 9, 1949. He had moderate limitation of back motions in all directions. The right ankle jerk is still absent, and the left is diminished. He complained of a little tenderness in the incisional scar in the lower back. Straight leg raising was limited on each side at 80°, but there was no pain. *He was advised to attempt to do more work.* He was dismissed from further care here, unless he should have further trouble."

The testimony of the claimant taken on November

29, 1949 shows that he has not been back to the doctors since June 9, 1949.

From a review of the record it is shown that claimant was paid $538.19 for a period of 24 2/7 weeks through May 15, 1949. On June 9, 1949 the doctors dismissed him from further care and he was advised to do more work. Extending his compensation - payments through June 9, 1949, claimant would be entitled to 27 6/7 weeks or a total of $543.20. He was paid $538.19, leaving a balance of $5.01. This would fully compensate claimant for temporary total disability.

There is no showing in the record of the nature and extent of a permanent partial disability. There is no showing of a difference in earning capacity, or proof of what claimant is able to earn in some suitable employment. Any claim for permanent or permanent partial disability will have to be denied.

An award is entered in favor of claimant for $5.01, balance on total permanent, and is payable forthwith.

The claim of Marie Springs for stenographic services in the amount of $12.29 is found reasonable and an award in the amount of $12.29 is hereby allowed.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."